UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>PEDRO SANCHEZ-PEREZ,<br><br>　　　　　　Defendant. | CASE NO. 24-cr-5190-BHS<br><br>ORDER |

THIS MATTER is before the Court on the Government's motion to dismiss all charges pending against the defendant, Pedro Sanchez-Perez, without prejudice, Dkt. 83.

On August 19, 2025, the Department of Homeland Security's Immigration and Customs Enforcement Agency (ICE) removed Sanchez-Perez to Mexico while criminal charges were still pending. Dkt. 86-5 at 1. Upon learning of his removal, the Government promptly moved to dismiss the charges without prejudice. Dkt. 83.

The parties agree that dismissal is appropriate. Dkts. 83, 86. Sanchez-Perez's removal during the pendency of his criminal proceedings is interfering with his Sixth Amendment right to "consult with counsel, to review the evidence against him[,] and to prepare a defense to the charge." *United States v. Resendiz-Guevara*, 145 F. Supp. 3d

ORDER - 1

1128,1138 (M.D. Fla. 2015); *see United States v. Lutz*, Case No. CR19-00692-TUC-RM(BGM), 2019 WL 5892827, at *2 (D. Ariz. Nov. 12, 2019).

The only question before this Court is whether to dismiss the indictment with or without prejudice. If the dismissal is without prejudice, as the Government requests, then it may choose to reindict Sanchez-Perez at a later time. However, if it is with prejudice, as Sanchez-Perez argues it must be, the charges may not be refiled.

## I.    BACKGROUND

On August 7, 2024, ICE officers arrested Sanchez-Perez pursuant to a civil immigration arrest warrant. *See* Dkt. 1 at 6. During the arrest, officers discovered a loaded magazine in Sanchez-Perez's front pants pocket. *Id.* An officer asked Sanchez-Perez where the gun was, and he responded that it was "in the truck" under his seat. *Id.* The officers transported Sanchez-Perez to an ICE field office, where he was processed for removal and for reinstatement of a prior removal order entered in 2009. *Id.* at 7; Dkt. 86-1.

The Government charged Sanchez-Perez with Reentry of Removed Alien in violation of 18 U.S.C. § 1326(a) (count one), as well as Unlawful Possession of a Firearm and Ammunition in a Vehicle (count two) and Unlawful Possession of Ammunition on his person (count three) in violation of 18 U.S.C. § 922(g)(1). Dkt. 33. Counts two and three are predicated on prior felony convictions. *Id.*; Dkt. 51. The Government moved to detain Sanchez-Perez while trial was pending, but Magistrate Judge David Christel ordered him released on an appearance bond subject to certain conditions, including location monitoring. *See* Dkts. 4, 14. Upon his release, ICE separately determined that

1  Sanchez-Perez would not be returned to immigration detention, but rather placed him
2  under supervision pursuant to its Alternatives to Detention (ATD) program. Dkt. 86-2.
3  For approximately the next year, Sanchez-Perez complied with both the bond in this case
4  as well as the conditions of his ATD supervision. Dkts. 35, 86.

5  Sanchez-Perez worked with counsel to prepare a defense to his criminal charges.
6  Dkt. 86-5 at 2. He filed multiple pretrial motions, including a motion to dismiss the
7  illegal reentry charge, contending that the two prior removal orders were invalid, Dkts.
8  49, 76, and a motion to suppress evidence, asserting that ICE agents violated his Fourth
9  and Fifth Amendment rights during his August 2024 arrest, Dkts. 53, 74. These motions
10 were pending at the time Sanchez-Perez was removed to Mexico and the Government
11 moved to dismiss the charges.

12 On August 13, 2025, ICE officers took Sanchez-Perez into immigration custody
13 when he appeared as directed at an ATD supervision appointment. Dkt. 86-3. Five days
14 later, on August 18, 2025, defense counsel met with Sanchez-Perez at the Northwest
15 Detention Center. Dkt. 86-5 at 3. Sanchez-Perez reported to counsel that when ICE
16 officers arrested him, they cut off his location monitoring anklet and told him that they
17 would call his pretrial officer. *Id.* He stated that he did not know what was happening
18 with his immigration case or whether he would have a hearing. *Id.*

19 On August 20, 2025, the Government reported to defense counsel that Sanchez-
20 Perez would be removed "imminently." Dkt. 86-3 at 5. Counsel attempted to arrange a
21 visit with Sanchez-Perez but learned that he had already been moved out of state to
22

Arizona. *Id*. Counsel discovered that the basis for ICE's removal was the 2009 removal order that Sanchez-Perez was in the process of challenging in this Court. Dkt. 86 at 5.

The Government now moves to dismiss the pending charges against Sanchez-Perez *without* prejudice, declaring that due to Sanchez-Perez's removal to Mexico, it no longer seeks to continue prosecution. Dkt. 83. Sanchez-Perez agrees that dismissal is the appropriate remedy but argues that dismissal should be *with* prejudice. Dkt. 86. He contends that the Court is authorized under its supervisory powers to dismiss the case with prejudice because the Government's actions in arresting and deporting Sanchez-Perez violated his constitutional rights under the Fifth, Sixth, and Eighth Amendments, his rights under the Bail Reform Act (BRA), and the civil requirements for removal under the Immigration and Nationality Act and related regulations.[1] *Id.* He argues that dismissal is necessary to remedy those violations and to deter ICE's practice of removing defendants without regard to ongoing criminal proceedings. *Id.* at 13.

The Government argues in reply that the Court is required to grant its motion as requested, contending it was not done in bad faith and that dismissal does not unfairly prejudice Sanchez-Perez in any way. Dkt. 92 at 4. It emphasizes that the legality of Sanchez-Perez's civil immigration detention has no bearing on this criminal case. *Id.* at 11. It asserts that in this criminal prosecution, Sanchez-Perez has been afforded all the constitutional protections of due process. *Id.*

---

[1] Although Sanchez-Perez characterizes this document as a response to the Government's motion, the Court construes it as a motion because it affirmatively seeks alternative relief.

## II. DISCUSSION

Sanchez-Perez asks the Court to dismiss his indictment with prejudice for three primary reasons: (1) the Government violated his constitutional and statutory rights, warranting the Court's exercise of its supervisory power; (2) the Government violated his right to due process; and (3) protection from Government harassment and retaliation, pursuant to the Court's discretionary authority under Rule 48(a) of the Federal Rules of Criminal Procedure. Dkt. 86. The Court considers each argument in the order that Sanchez-Perez presented them.

### A. Supervisory Powers

A district court may order the dismissal of an indictment with prejudice, even when there is no dismissal request by the Government, under either of two theories: first, on the ground of "outrageous government conduct if the conduct amounts to a due process violation," and second, "under its supervisory powers." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). A court may exercise its supervisory powers for several reasons, including to "remedy a constitutional or statutory violation" or to "deter future illegal conduct." *Id*. Dismissal under a court's supervisory powers is appropriate only when a defendant suffers "substantial prejudice" and "no lesser remedy is available." *United States v. Chapman*, 524 F.3d 1073, 1092 (9th Cir. 2008) (internal citations and quotation marks omitted).

Sanchez-Perez requests that the Court exercise its supervisory powers to dismiss his indictment with prejudice, contending that the Government violated his Fifth, Sixth, and Eighth Amendments rights by abruptly arresting him and removing him from the

1 country. Dkt. 86 at 5. He cites several district court decisions in which courts found that
2 the Government's continued prosecution of removed defendants violated their
3 constitutional rights. *Id.* at 11; *see e.g.*, *United States v. Castro-Guzman*, No. CR-19-
4 2992-TUC-CKJ (LCK), 2020 WL 3130395, at *5 (D. Ariz. May 11, 2020) (A
5 defendant's Sixth Amendment right to counsel and speedy trial right were violated when
6 a removed defendant was unavailable "for his scheduled trial date and oral arguments.");
7 *Lutz*, 2019 WL 3253194, at *3 (A removed defendant "continues to suffer a violation of
8 his right to counsel in this matter."); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d
9 1167, 1180 (D. Or. Oct. 29, 2012) (A detained defendant under the INA was deprived of
10 his constitutional and statutory rights under the BRA when the Government continued to
11 prosecute criminal charges.). These cases are distinguishable.

12       Here, the Government is not seeking to prosecute Sanchez-Perez while he is
13 removed to Mexico. The Court agrees that such action would violate his constitutional
14 rights. Instead, the Government moved to dismiss all charges. Given the dismissal,
15 Sanchez-Perez fails to show how his constitutional rights were violated in this specific
16 criminal proceeding.

17       Nor does the Court find that Sanchez-Perez's rights to pretrial release under the
18 BRA were violated when he was detained by ICE authorities. Sanchez-Perez argues that
19 the BRA requires the Government to choose between pursuing criminal proceedings and
20 immigration enforcement. Dkt. 86 at 9–10. He contends that this is especially true where,
21 as here, he has already participated in substantial litigation, including by filing multiple
22 pending dispositive motions. *Id.* at 8. Sanchez-Perez primarily relies on the district

court's analysis in *United States v. Rangel*, 318 F. Supp. 3d 1212 (E.D. Wash. March 21, 2018) to argue that both criminal and immigration enforcement cannot be pursued at the same time. *Id.* at 9 (quoting *Rangel*, 318 F. Supp. 3d at 1218 ("[I]f the BRA applies, statutes governing detention related to immigration proceedings do not.")). However, *Rangel* does not support Sanchez-Perez's requested remedy—that dismissal should be with prejudice.

In *Rangel*, ICE detained the defendant pending removal proceedings, but the Government continued to pursue criminal charges. 318 F. Supp. 3d at 1212. As a result, the defendant failed to appear at a pretrial conference, and his ability to effectively consult with his defense counsel and present a defense to the charges was severely limited. *Id.* at 1219. Exercising its supervisory powers, the district court concluded that dismissal of the indictment *without prejudice* was appropriate. *Id.* at 1220. Not only is *Rangel* distinguishable on its facts—in which the Government continued to prosecute despite removal, but its conclusion actually supports the Government's position, which expressly seeks dismissal without prejudice.

In addition, Sanchez-Perez has not established that application of the BRA necessarily precludes application of the INA. *See e.g.*, *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019) ("[W]hile the BRA aims to ensure a defendant's presence at trial, the INA uses detention to ensure an alien's presence at removal proceedings".). The Court finds Judge John Coughenour's opinion in *United States v. Rincon-Meza*, No. CR19-0062-JCC, 2019 WL 2208734 (W.D. Wash. May 22, 2019) to be persuasive.

1     There, a defendant was detained by ICE after a district court ordered him released on pretrial bond conditions pursuant to the BRA. *Id.* at *1. The defendant moved to dismiss the criminal indictment with prejudice, arguing that his detention by ICE violated his BRA right to pretrial release as well as other multiple constitutional rights. *Id.* The Court denied the motion, concluding that the district court's order for release under the BRA did not prohibit ICE from exercising its discretion under the INA to detain the defendant pending removal. *Id.* at *4; *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019) (ICE's authority to detain or remove a defendant pursuant to the INA "does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial."); *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 919 (D. Ariz. April 21, 2020) ("A court's decision to release a defendant pending trial despite the existence of an ICE detainer does not necessarily strip ICE of its authority to detain and remove an alien."). The court explained, "The detention of a criminal defendant pending trial and the detention of an alien pending removal proceedings are separate functions, administered by separate authorities, and serve different purposes." *Id.* at *3.

Multiple circuit courts have likewise held that the BRA and INA can be interpreted to give effect to both statutes, concluding that release under the BRA does not prevent detention or removal under the INA. *See United States v. Baltazar-Sebastian*, 990 F.3d 939, 945 (5th Cir. 2021); *United States v. Barrera-Landa*, 964 F.3d 912 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950 (8th Cir. 2020); *United States v. Lett*,

944 F.3d 467 (2d Cir. 2019); *Soriano Nunez*, 928 F.3d 240; *Vasquez-Benitez*, 919 F.3d 546; *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018).

The Court concludes that without more, Sanchez-Perez has not established that his BRA rights were violated simply because he was detained pursuant to the INA while on pretrial release in his criminal proceeding.

Furthermore, even assuming that Sanchez-Perez's rights were violated, he fails to show how dismissal without prejudice would "substantially prejudice" his criminal defense or even why dismissal without prejudice is an insufficient remedy. *See Chapman*, 524 F.3d at 1092. Dismissal of the charges in this case is in "essence a windfall—he is escaping, at least for now, prosecution on charges the grand jury has already found to be supported by probable cause." *United States v. Arevalo-Garcia*, No. CR-22-00582-001-PHX-DWL, 2022 WL 2356763, at *2 (D. Ariz. June 30, 2022). Should Sanchez-Perez return to the United States and the Government decide to pursue criminal charges, he will once again be afforded every constitutional and statutory right that accompanies criminal prosecution. Given that dismissal without prejudice is a sufficient remedy, the Court declines to exercise its supervisory powers to grant Sanchez-Perez's request to dismiss his indictment with prejudice.

**B.      Due Process**

A district court may also dismiss an indictment with prejudice if the Government's conduct amounts to a due process violation. *Barrera-Moreno*, 951 F.2d at 1091. To violate due process, the Government's conduct "must be 'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *Id.* at 1092 (quoting *United*

*States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (citations and internal quotations omitted)).

Sanchez-Perez argues that the Government violated his due process rights with respect to his criminal case when it abruptly arrested him in violation of his BRA release order. For support, he relies on several civil habeas cases in which the petitioners successfully challenged the legality of their immigration detention as due process violations. *See, e.g., Nguyen v. Scott, et. al.*, CV25-1398-TMC, at Dkt. 45 (W.D. Wash. Aug. 21, 2025); E.*A.T.-B. v. Bostock et.* al., CV25-1192-KKE, at Dkt. 37 (W.D. Wash. Aug. 19, 2025); *Kelly v. Almodovar*, No. CV25-6448-AT (S.D.N.Y Aug. 15, 2025); *Castellon v. Kaiser*, No. CV25-968-JLTEPG, 2025 WL 2372425(E.D. Cal. Aug. 14, 2025). However, those cases are inapposite.

Here, the Court is not deciding whether Sanchez-Perez's due process rights were violated in his immigration proceedings under the INA. To be sure, Sanchez-Perez raises serious concerns that ICE may have violated his due process rights under the INA when removing him without providing notice and an opportunity to be heard. *See E.A.T.-B.*, CV25-1192-KKE, Dkt. 37 at 6 ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). However, the focus of this case is on the due process afforded Sanchez-Perez within the context of his criminal proceeding.

In addition, his argument presumes that a defendant cannot be detained under the INA if release is ordered under the BRA. As indicated in the Court's analysis above, ICE's authority to detain or remove a defendant pursuant to the INA "does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." *Vasquez-Benitez*, 919 F.3d at 553; *see Rincon-Meza*, 2019 WL 2208734, at *3.

On this limited record, the Court concludes that the Government's actions, including its decision to promptly dismiss the charges, did not violate Sanchez-Perez's rights to due process in his criminal proceeding. The Court therefore denies Sanchez-Perez's request to dismiss his indictment with prejudice as a result of a due process violation.

**C.     Rule 48(a)**

Rule 48(a) provides that the Government "may, with leave of court, dismiss an indictment, information, or complaint." When the Government moves to dismiss an indictment in good faith, a district court is "duty bound" to honor that request. *United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988). However, if the court finds that the Government seeks dismissal in bad faith, the court may exercise its discretion and deny the request. *Id.* Bad faith is established when a dismissal motion is "prompted by considerations clearly contrary to the public interest" or if there is a genuine concern that the defendant would be subjected to "prosecutorial harassment" through "charging, dismissing, and recharging." *United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988).

1  Sanchez-Perez argues that the Court should exercise its discretion to dismiss with

2 prejudice under Rule 48(a), contending that such dismissal is necessary to protect him

3 from potential future harassment and retaliation. Dkt. 86 at 23. He contends that the

4 timing of his removal, while dispositive motions in his criminal proceeding were still

5 pending, suggests that the Government acted for "strategic advantage," including to avoid

6 producing discovery and to prevent rulings in his favor. *Id.* He further asserts that

7 immigration regulations 8 C.F.R. §§ 215.2, 215.3 required the Government to consent to

8 ICE's decision to detain and remove him. Dkt. 86 at 12–13; *see* 8 C.F.R. §§ 215.2 ("No

9 alien shall depart, or attempt to depart, from the United States if his departure would be

10 prejudicial to the interests of the United States under the provisions of § 215.3."), *id.* at §

11 215.3(g) (The departure of any "alien who is needed in the United States as . . . a party to

12 [] any criminal case under investigation or pending in the United States" shall be

13 considered prejudicial.).

14  In response, the Government contends that Rule 48(a) requires the Court to grant

15 its motion to dismiss as requested without prejudice, asserting that there is no evidence its

16 motion was made in bad faith. Dkt. 92 at 9. It asserts that "civil administrative decisions

17 [are] made by ICE, and ICE alone," and that Sanchez-Perez's assertion—that the

18 Government has the power to "stop ICE"—is "categorically false." *Id.* It further asserts

19 that 8 C.F.R. §§ 215.2, 215.3 apply only to those who "depart from" the United States,

20 not those who are removed. *Id.*

21  As a preliminary matter, the Court agrees with the Government that 8 C.F.R. §§

22 215.2, 215.3 do not apply in this context. Those provisions are intended to govern

voluntary departures, not removals. *See Lett*, 944 F.3d at 472 ("[T]hese regulations merely prohibit aliens who are parties to a criminal case from departing from the United States voluntarily."); *Baltazar-Sebastian*, 990 F.3d at 946 ("[E]very circuit to consider the issue agrees the regulations concern an alien's own actions, not those of ICE.").

That said, the Court disagrees with the Government's broad proposition that it could do nothing to stop ICE from removing Sanchez-Perez. The Court finds it significant that the lead prosecutor in this case, an ICE attorney on special assignment in the U.S. Attorney's Office, was immediately made aware of both Sanchez-Perez's initial detention and his removal. Dkt. 86 at 2, 13. The Government surely had time to influence or advocate for deferral of Sanchez-Perez's removal pending completion of his criminal matters. *Id.* at 2. Despite this, the Court concludes that the Government's conduct does not rise to the level of bad faith.

Although Sanchez-Perez argues otherwise, the timing of the Government's request for dismissal weighs in favor of finding good faith. The Government did not seek dismissal before pretrial motions were filed, after the Government reviewed Sanchez-Perez's arguments, or after the Court ruled in his favor. Instead, within weeks of learning of Sanchez-Perez's removal to Mexico, the Government stopped prosecution and moved to dismiss. Any suggestion about how this Court might rule on pending motions in his criminal matter is purely speculative.

Nor is there any evidence that the Government filed for dismissal to gain a tactical advantage or to harass Sanchez-Perez with multiple indictments. The Government declares that it may only seek charges if Sanchez-Perez returns to the United States.

Moreover, even if he were to return and face renewed prosecution, he would again be afforded the right to counsel and every other right that accompanies a criminal prosecution.

Finally, public interest weighs in favor of dismissal without prejudice. A Rule 48(a) motion is clearly contrary to the public interest "in extremely limited circumstances" where "the prosecutor's actions clearly indicate a 'betrayal of the public interest.'" *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981). Here, a grand jury found probable cause to indict Sanchez-Perez for illegal reentry and for unlawful possession of ammunition and a firearm based on a prior felony second degree assault conviction. Dkt. 49–5 at 3-17. The public has a legitimate interest both in preserving public resources as well as in seeing indictments prosecuted. *See United States v. Swenson*, 894 F.3d 677, 685 (5th Cir. 2018) ("Dismissal of an indictment with prejudice is a rare result because, even in the face of prosecutorial misconduct, there is a public interest in having indictments prosecuted." (internal quotation marks omitted)). The Court does not find that the Government's request to dismiss Sanchez-Perez's indictment without prejudice is clearly contrary to the public interest.

The Court concludes that the Government did not act in bad faith when moving to dismiss the charges without prejudice. With this finding, the Court is "duty-bound" to grant the Government's request. *Hayden*, 860 F.2d at 1487.

### III.  CONCLUSION

The Court concludes that the Government's actions, including its decision to promptly dismiss the charges, did not violate Sanchez-Perez's constitutional or statutory

rights in his criminal proceeding. The Court also concludes that the Government did not act in bad faith when moving to dismiss the charges without prejudice and is therefore required under Rule 48(a) to grant the Government's motion.

For these reasons, it is **ORDERED** that the Government's motion to dismiss without prejudice, Dkt. 83, is **GRANTED**, and Sanchez-Perez's motion to dismiss with prejudice, Dkt. 86, is **DENIED**.

Dated this 21st day of October, 2025.

BENJAMIN H. SETTLE
United States District Judge